UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**GISELE ROTH SAIZ WENDEL,**          Civil Action No.: 1:19-cv-21658-KMW

    **Plaintiff.**
v.

**INTERNATIONAL REAL ESTATE.NEWS, LLC,**
**and DAVID BASCH,**

    **Defendants.**
_____/
**DAVID BASCH,**

    **Defendant/Third-Party Plaintiff,**
v.

**DAVID FARRON,**

    **Third-Party Defendant.**
_____/

### DAVID BASCH'S MOTION TO DISMISS COUNT VI OF GISELE WENDEL'S AMENDED COMPLAINT [ECF 53] AND INCORPORATED MEMORANDUM OF LAW

David Basch ("Basch"), through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), submits his Motion to Dismiss Count VI of the Amended Complaint [ECF 53] of Gisele Wendel ("Wendel") and Incorporated Memorandum of Law, and states:[1]

---

[1] This is a dispute brought pursuant to the Fair Labor Standards Act ("FLSA"). Wendel filed this action on April 29, 2019 with a five-count complaint [ECF 1] to which Basch filed an answer along with affirmative defenses (re-plead pursuant to an Order of the Court [ECF 25]), which also contains a third-party claim against Defendant International Real Estate.News, LLC's ("IREN") managing member David Farron ("Farron") [ECF 31]. Farron's motion to dismiss the third-party claim remains pending [ECF 44, 46, 48]. The Court's August 12, 2019 Scheduling Order sets a September 19, 2019 deadline to file any motion to amend pleadings [ECF 30, p. 2]. On November 26, 2019, Wendel filed an *opposed* motion for leave to file an amended complaint to add Count VI, which the Court granted on December 2, 2019 before Basch could file any opposition. The Amended Complaint was filed on December 2, 2019 and presents the same five counts as the original complaint, only with an additional Count VI. This motion seeks dismissal of Count VI, but Basch's answer, re-pleaded affirmative defenses and third-party complaint filed at ECF 31 remains in response to the otherwise five identical counts of the Amended Complaint.

1

1. Wendel's Amended Complaint attempts to add in Count VI a FLSA retaliation claim against Basch based solely on allegations as to what Basch testified about as to one of his affirmative defenses in a recent deposition taken in this case by Wendel's own attorney.

2. While Count VI grossly misstates Basch's deposition testimony, the allegations of Count VI are that Basch testified at a deposition that he contacted the Department of Homeland Security ("DHS") concerning Wendel after she filed this action so as to jeopardize her immigration status in order to intimidate and to dissuade her from pursuing this lawsuit [ECF 53, ¶¶ 38, 39]. These are the sole factual allegations against Basch in support of Count VI.

3. At the time of Basch's testimony, however, Basch had, and still has pending, in this case an unclean hands affirmative defense under Florida's common law which relies, in part, on allegations that Wendel engaged in various acts of immigration fraud with IREN's managing member Farron which actions Wendel is now using to try to wrongfully obtain money from Basch to which she is not entitled as part of that immigration fraud [ECF 31, p. 10, ¶ 12]. The details of Wendel's immigration fraud and that consequential harm to Basch are set forth in detail in Paragraph 12 of his affirmative defenses to the effect that Farron and Wendel were involved in a scheme to make Wendel appear to be an employee of IREN when she was in fact not an employee, so that Wendel could apply for and obtain a visa to remain in the United States with IREN as a sponsor. Wendel's visa was expiring at the end of 2018 and she desperately needed IREN's sponsorship according to several email of Wendel that she has produced in this case. While IREN was a start-up with no revenue to pay her any salary or otherwise, Farron and Wendel created phony documents at IREN, and took fraudulent action to have IREN "sponsor" Wendel as an employee on a PERM application so she could obtain her visa, though she was instead working as a consultant for IREN through her husband's company instead.

4. Apart from Wendel's emails referenced above, multiple documents obtained in discovery support the existence of this immigration fraud by Wendel and Farron as well. These include a text marked by Wendel herself at Basch's deposition where Farron informs Basch that IREN is paying Wendel a salary for September, but that Wendel will pay IREN back the money next month. A PERM application was also produced that Farron and Wendel put together that, while submitted to the United States under oath by Wendel, conflicts with Wendel's allegations in this case, such that Farron was her supervisor (not Basch), she worked no overtime, and a host of other testimony she recently provided. Wendel's immigration status, and her immigration submission to the United States, have been at issue in this case for several months prior to Basch's

deposition. Wendel tried to have Basch's allegations of her immigration fraud stricken from his affirmative defenses, but failed [ECF 16, 18, 25, 31].

5. Wendel's Count VI against Basch for FLSA retaliation based solely on the allegation that Basch testified at his deposition that he contacted DHS about her is not actionable because that action occurred, on the face of Count VI's allegations, after Wendel brought this action. Such action is protected under Florida's absolute litigation privilege as relating to Basch's unclean hands affirmative defense which is based in part on Wendel's immigration fraud. Wendel just recently had Basch's abuse of process counterclaim against her dismissed based on the litigation privilege, but that same privilege affords Basch the right to pursue proof of, and to investigate, his unclean hands affirmative defense without facing a civil action relating to such by Wendel.

6. Wendel's Count VI also fails because the Southern District has already held that questioning and providing answers at a deposition about a FLSA plaintiff's allegedly illegal immigration status is not actionable as FLSA retaliation, without more. Wendel's whole Count VI is based simply on the allegation that Basch *testified* at his deposition that he contacted DHS, with nothing more. Additionally, no allegation is even made that Basch or anyone else ever communicated this contact to Wendel, so it cannot on its face be actionable under the elements of proof of a FLSA retaliation claim. An action never communicated to a party could not have been taken to intimidate a party, which is a required element for a FLSA retaliation claim.

7. For these and the reasons set forth below, the Court should dismiss Count VI of the Amended Complaint.

## INCORPORATED MEMORANDUM OF LAW

### A. Standards for Ruling on a Motion to Dismiss

In ruling on a motion to dismiss, the Court takes the allegations as true and construes the allegations "in the light most favorable to the [non-moving party]." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [the complaint] 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek*

*v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a [complaint] in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [Defendants]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

### B. The Litigation Privilege Protects Basch's Action Relating To His Affirmative Defense Of Unclean Hands Based On Wendel's Immigration Fraud.

Under Florida Law, the "litigation privilege" provides an absolute immunity on all acts that occur during the course of a judicial proceeding. *Jackson v. Bellsouth Telecommunications*, 374 F.3d 1250, 1274 (11th Cir. 2004). This absolute immunity is applied to all acts during the proceeding as long as the act is related to the proceeding. *LatAm Investments, LLC v. Holland & Knight*, 88 So.3d 240, 242 (Fla. 3d DCA 2011) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994)). The litigation privilege is applicable to all causes of action, including a statutory violation or a cause of action under common law. *Echevarria, McCalla, Raymer, Barret & Frappier v. Cole*, 950 So. 2d 380, 380-81 (Fla. 2007). The litigation privilege is an affirmative defense, but it may be (and often is) applied in the context of a motion to dismiss. *LaTam,* 88 So. 3d at 245 (citing *Kidwell v. Gen. Motors Corp.*, 975 So. 2d 503, 505 n.2 (Fla. 2d DCA 2007)); *see also Vaswani v. Ganobsek,* 402 So. 2d 1350, 1351 (Fla. 4th DCA 1981) ("If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such defense can be considered on a motion to dismiss.").

The litigation privilege affords absolute immunity to any act occurring during the judicial proceedings regardless of the fact that it may include defamatory statements or other tortious behaviors; the only requirement is that it be related to the proceeding. *EMI Sun Village, Inc. v.*

*Catledge*, 2019 U.S. APP WL 2714325, No. 16-11841, at *6 (11th Cir. June 28, 2019) (citing *Levin*, 639 So. 2d at 608). The underlying rationale for applying the privilege is the necessity for litigants to use their best judgment in pursuing their case as they see fit without fear of a subsequent civil action. *Echevarria*, 950 So. 2d at 384 (citing *Levin*, 639 So.2d at 668). "It is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is the heart of the rule. The nature of the underlying dispute simply does not matter." *Id.*

Denying a motion to strike by Wendel, the Court allowed Basch's unclean hands affirmative defense under Florida common law to proceed based, in part, that this action by Wendel is based on Wendel engaging in immigration fraud. Such immigration fraud is alleged in ECF 31 as a scheme Wendel engaged in with Farron to defraud the United States through various actions such as the creation of phony documentation at IREN that she and Farron submitted to the United States with other false information, submitted under oath, by Wendel to try to have Wendel's visa extended past the end of 2018. While the Court required Basch to re-plead this affirmative defense to allege harm to him as opposed to just the United States (which Basch did at ECF 31, p. 10, ¶ 12, without further challenge by Wendel), the Court ruled that Basch's immigration fraud claims by Wendel as part his unclean hands defense are "directly related to Plaintiff's claim." ECF 25 at p. 10 (citing *Royal Palms Props., LLC v. Premier Estate Props., Inc.*, No. 10-80232-CV-COHN, 2010 U.S. Dist. LEXIS 110433, at * 6 (S.D. Fla. Oct. 6, 2010)). As set forth above, Basch has to date uncovered substantial proof for this affirmative defense, such as the text from Farron about Wendel kicking back to IREN a salary check for September, 2018.

Contacting DHS, which is involved in immigration, concerning Wendel in this case are part of the investigation and in pursuit of this unclean hands affirmative defense as allowed as pled. All that is required to trigger the protection of the litigation privilege is that the act at issue was taken "during the course of a judicial proceeding," *Jackson*, 374 F.3d at 1274, and such act "related to the proceeding." *LatAm*, 88 So.3d at 242. The litigation privilege operates as an absolute privilege at this time for any such conduct. The face of Count VI itself reflects Basch's testimony concerning his contact with DHS was after the case was filed and concerning the claims she has brought.

While Wendel's Count VI contends Basch took such action with malice with no other purpose but to harm Wendel, to retaliate against her, and to dissuade her from continuing this

case, Basch alleged the same in his recent abuse of process counterclaim against Wendel. The Court ruled the litigation privilege barred Basch's abuse of process counterclaim at the motion to dismiss stage regardless of Basch's allegations at to Wendel's improper motive [ECF 47]. In fact, the Court ruled there that "the litigation privilege affords absolute immunity to any act occurring during the judicial proceedings regardless of the fact that it may include defamatory statements or other tortious behaviors; the only requirements is that it be related to the proceedings." ECF 47, p. 6 (citing *EMI Sun Village, Inc. v. Catledge*, 2019 U.S. APP WL 2714325 No. 16-11841, at *6 (11th Cir. June 28, 2019)). The Court further ruled that "[t]he underlying rationale for applying the privilege is the necessity for litigants to use their best judgment in pursuing their case as they see fit without fear of a subsequent civil action. ECF 47, p. 6 (citing *Echevarria*, 950 So.2d at 384)) ("it is the perceived necessity for candid and unrestrained communications in those proceedings, free from threat of legal actions predicated upon those communications, that is the heart of the rule. The nature of the underlying dispute simply does not matter").

While Wendel alleges that Basch contacted DHS with malice and for no reason but to intimidate her and allegedly punish her,[2] Basch alleged in his abuse of process counterclaim that Wendel's sole reason for bringing this action was to harass and punish him for suing her husband. But the Court rejected Basch's argument under the litigation privilege that because "Plaintiff has a fundamental right to pursue an action for unpaid wages if a plausible claim for relief can be made and she may choose to prosecute her case as she sees fit." ECF 47, p. 7 (citing Echevarria. 950 So.2d at 384). The same is true for Basch's unclean hands affirmative defense: The Court has allowed this affirmative defense based explicitly on immigration fraud to stand as a proper defense to Wendel's claims. Basch accordingly has a fundamental right to pursue proof of such as he sees fit. Wendel cannot have it both ways. Permitting Wendel to maintain a FLSA retaliation claim against Basch for actions taken in connection with his affirmative defense would improperly hinder his right and privilege to use his best judgment to defend her claims without threat of civil action.

For these reasons, the Court should dismiss Count VI based on Florida's litigation privilege.

---

[2] As set forth above, Wendel's allegation of what Basch testified to is grossly inaccurate, but for the motion to dismiss stage, must be taken as true.

### C. Providing Testimony At A Deposition, Without More, Is Not Actionable Retaliation under the FLSA.

Section 215(a)(3) of Title 29 in relevant part makes it unlawful for a person "to discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter . . . ." In order to demonstrate a prima facie case of retaliation under the FLSA, plaintiffs must demonstrate (1) that they engaged in protected activity under the FLSA; (2) that they subsequently suffered an adverse action by their employer; and (3) that a causal connection existed between the employees' activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). "For an action of an employer to be considered adverse and retaliatory, the employee must prove that the action would dissuade a reasonable worker from making and supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006).

Count VI falls short under these standards. Count VI on its face alleges that in response to deposition questioning by Wendel's attorney of Basch as the deposition of Basch that Wendel's counsel scheduled, Basch testified that he contacted DHS about Wendel after the lawsuit was filed. Wendel's precise allegations of Count VI are:

> 38.   Plaintiff then deposed Defendant, David W. Basch, wherein he testified that in response to the filing of this lawsuit, and to "punish" Plaintiff, he took adverse action that he intended to intimidate Plaintiff and dissuade her from pursuing this lawsuit.
>
> 39.   Defendant, David W. Basch, in particular testified that he reported Plaintiff to the Department of Homeland Security as a direct and proximate result of her filing and pursuing this lawsuit against him, so as to potentially jeopardize Plaintiff's immigration status in this county. *See Suchite v. Kleppin*, 819 F. Supp.2d 1284, 1294 (S.D. Fla. 2011).

Amended Complaint at p. 9 [ECF 53].

Nowhere in Count VI does Wendel allege that Basch, or anyone else, communicated this contact to Wendel, or threatened Wendel that this communication was forthcoming or had been made. In fact, nowhere does Wendel actually allege that Basch did anything at all but *testify* that he contacted DHS. Providing testimony that he contacted DHS without communicating such to Wendel, or doing anything above giving this testimony in response to her direct questioning, cannot "dissuade a reasonable worker from making and supporting a charge of discrimination." Count VI fails on this ground alone.

In addition, Wendel cites to *Suchite v. Kleppin*, 819 F. Supp.2d 1284 (S.D. Fla. 2011), in Count VI, above, which is instructive in this case. There, a defense attorney asked the Court during a hearing to refer the FLSA plaintiff for a criminal prosecution and possible deportation. 819 F. Supp. 2d at 1293. The Court found those statements during a hearing provided grounds for a FLSA retaliation claims because "requesting in open court that a judge refer a plaintiff for criminal prosecution or deportation would dissuade a reasonable worker from making or support a charge of discrimination." *Id*. That is not what happened here. Basch's statement was made in a private deposition upon questioning by Wendel. Basch has not asked the Court to do anything.

More importantly, in *Suchite*, the Court *also* held that the same defense attorney's questioning of the FLSA plaintiff at a deposition about his immigration and how he entered the United States were not actionable FLSA retaliation because "those questions were asked outside the presence of the judge, outside the presence of law enforcement, and with the Plaintiffs' attorney present to defend the deposition." 819 F. Supp. 2d at 1293. If asking questions of a FLSA plaintiff concerning his illegal immigration status at a deposition is not actionable retaliation under the FLSA, Basch testifying in direct response to the questions of Wendel's own counsel at his deposition certainly cannot be actionable. Wendel's Count VI is not based on anything Basch did. The allegations are based on Basch's testimony at a deposition. The Court in *Suchite* rejected this as actionable FLSA retaliation. The Court should do the same here.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should dismiss Count VI.

WHEREFORE David Basch prays this Honorable Court will dismiss Count VI and that this action proceed based on the original complaint as the claims and allegations are the same absent the addition of Count VI, and for such other relief as the Court deems appropriate.

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served via the email addresses of all parties in interest as set for on the CM/ECF systems with the Clerk of the Court, on this the 16th day of December, 2019.

**STEVEN FENDER PA**

 */s/ G. Steven Fender*
G. STEVEN FENDER, ESQ.
Florida Bar No. 060992
Attorney for David Basch
P.O. Box 1545
Ft. Lauderdale, FL 33302
Telephone: (407) 810-2458
Email: steven.fender@fender-law.com

9